**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**FRED REEVES,**

    **Plaintiff,**

**v.**

    Case No. 5:04-cv-193
    Hon. Gordon J. Quist

**J. GREENFIELD, L. GILMAN,**
**D. HALL, E. HUSS, D. MACKEY,**
**SGT. PIERCE,  A. VROMAN, and**
**W. SMITH,**

    **Defendants.**

    _____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on the motion to dismiss pursuant to Fed. Rules Civ. Proc. 12(b)(6) filed by defendants Greenfield, Hall, Huss, Mackey, Pierce, Vroman and Smith (docket no. 31).[1]

    **I.**    **Plaintiff's complaint**

Plaintiff sets forth the following allegations in his complaint:

On 2-9-04, I was took [sic] to the Unit #2 day room and assaulted by officers Hall and Greenfield while in full restraints, who slammed my head up against the wall and injured my arms and neck while pulling on the restraints. I was being told during the assault that "if I did not stop it with the lawsuits, grievances and using staff social security numbers I would get my black ass killed." Prior to being left in the day room with these officers I told Sgt. Pierce that I feared for my safety but he left me unattended anyway. W. Smith, L. Gilman, E. Huss, B. Goodson, Inspector Haynie, A. Vroman and D. Mackey were notified of threats of assaults but fail to protect.

---

[1] Defendant Gilman has not been served with a summons in this matter.

Compl. at ¶ V. Plaintiff states that he is suing each defendant in their individual capacities for monetary damages. *Id.* While plaintiff's complaint includes an allegation against "B. Goodson" and "Inspector Haynie," he has failed to include them as defendants in the caption of the complaint and they do not appear as defendants in this suit.

## II.    Standard of review for motion to dismiss

Defendants seek to dismiss plaintiff's complaint pursuant to Fed. Rules Civ. Proc. 12(b)(6). However, plaintiff has expanded the record by including affidavits in response to defendants' motion. Accordingly, the court will treat the motion as one for summary judgment pursuant to Rule 56. *See* Rule 12(b). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

**III.    Discussion**

**A.    Plaintiff's complaint should be dismissed for violating the court's injunction**

Plaintiff is a frequent litigator in this court, having filed over 40 separate actions. Because of his abusive history of filing unmanageable complaints, reciting dozens of unrelated claims against as many as fifty defendants, Chief Judge Robert Holmes Bell of this Court entered an injunction against plaintiff with respect to the filing of future complaints:

> IT IS FURTHER ORDERED that an injunction is issued as against plaintiff with regard to all future lawsuits filed in this court (or initially filed in the United States District Court for the Eastern District of Michigan and transferred to this court) requiring plaintiff, upon pain of dismissal: (1) to utilize the court-approved form for prisoner civil rights complaints and complete all sections of that form; (2) limit any supplement to the complaint form to no more than three single-sided sheets of paper containing legibly written factual allegations; (3) to limit his complaint to claims arising out of a common nucleus of fact; (4) to attach to his complaint only those exhibits necessary to demonstrate exhaustion of the claims asserted in the complaint against each named defendant and not exhibits relating to the merits of the claim; and (5) to preclude plaintiff from supplementing or amending his complaint in any future case without having first obtained leave of court, with a brief in support of any application for leave to amend showing that each proposed claim is exhausted as to each defendant and detailing how the proposed amendment arises out of the same nucleus of fact, why leave of court should be granted to add claims and/or parties, and plaintiff must attach to his brief a copy of the amended complaint.

*Reeves v. Smith*, No. 4:03-cv-50, slip op. at 3-4 (W. D. Mich. March 31, 2004). Since the issuance of the injunction in March 2004, plaintiff has filed several lawsuits that were in compliance with the Court's order.[2]

---

[2] *See, e.g., Reeves v. Sweet et al.*, No. 1:04-cv-605 (W.D. Mich.); *Reeves v. Gilman et al.*, No. 4:04-cv-108 (W.D. Mich.); *Reeves v. Datema et al.*, No. 5:04-cv-115 (W.D. Mich.); and *Reeves v. Bandt*, No. 1:04-cv-533 (W.D. Mich.).

In the present case, plaintiff has violated the clear language of the injunction. because his complaint raises several separate incidents that did not arise out of a common nucleus of fact. First, plaintiff alleges he was assaulted by defendants Hall and Greenfield on February 9, 2004. Second, plaintiff alleges that sometime prior to the alleged assault, he told defendant Sgt. Pierce that he feared for his safety. Third, plaintiff alleges that at some other time he notified defendants W. Smith, L. Gilman, E. Huss, A. Vroman and D. Mackey of "threats of assaults" and that they failed to protect him.

In support of his claim, plaintiff filed an affidavit and exhibits in opposition to defendants' motion. *See* Affidavit (docket no. 33) and Exhibits (docket no. 35). Plaintiff's affidavit expands upon his complaint and sets out various unrelated claims that occurred during a 10-month time span. Plaintiff states that after he filed a lawsuit on April 8, 2003, he was threatened "[o]n a daily basis . . . by defendants and other staff" for filing the lawsuit and grievances. Aff. at ¶¶ 15-16. Sometime after April 8, 2003, plaintiff states that he notified defendants W. Smith, L. Gilman, E. Huss, A. Vroman and D. Mackey "that defendants and other staff [were] constantly threatening to assault me for litigating." Aff. at ¶¶ 15-17. At some unspecified date, plaintiff requested to be moved. *Id.* at ¶ 18. Then, on February 7, 2004, some ten months after receiving the alleged daily threats, plaintiff refused a request from defendants Hall and Greenfield to come out of his cell for a shakedown and "ass whipping." *Id.* at ¶ 19. Two days later, on February 9, 2004, Officer Conner (not a defendant) and Greenfield asked plaintiff to come out for a shakedown and "ass whipping," but he refused unless defendant Pierce was present. *Id.* at ¶ 20. When Pierce arrived, plaintiff said he refused to come out because "of the threats to assault me." *Id.* at ¶ 21. Eventually, plaintiff came out and defendants Hall and Greenfield assaulted him. *Id.* at ¶ 24. At this time, plaintiff states that

4

he was issued a false misconduct citation for spitting on defendant Hall's and Greenfield's faces. *Id.* at ¶ 26.

In support of his complaint, plaintiff has submitted Misconduct Hearing Reports for five separate misconduct violations related to his complaint: disobeying a direct order by defendant Hall (February 7th); disobeying a direct order by non-defendant Conner (February 9th); assault and battery for spitting on defendant Hall (February 9th); assault and battery for spitting on defendant Greenfield (February 9th); and disobeying a direct order by defendant Pierce (February 9th). *See* docket no. 35. Plaintiff was found guilty of all five misconduct violations. *Id.*

In his suit, plaintiff claims that the eight defendants violated his constitutional rights numerous times between April 8, 2003 and February 9, 2004. These incidents did not arise from the same common nucleus of fact. Rather, the incidents occurred over a 10-month period of time and involved an assortment of corrections officers. In addition, some of the claims were adjudicated in misconduct hearings. Plaintiff's allegation that these events were triggered by the retaliatory motives of various corrections officers is insufficient to demonstrate a common nucleus of fact. Accordingly, plaintiff's complaint is not in compliance with the court's March 31, 2004 order and should be dismissed.

### B. Exhaustion of administrative remedies

In their motion to dismiss, defendants contend that plaintiff has not exhausted his administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature

5

of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. The exhaustion requirement, while not jurisdictional, is mandatory and must be addressed in the first instance by the district court in all prisoner civil rights cases before the merits of the case are addressed. *See Curry v. Scott*, 249 F.3d 493, 501 n.2 (6th Cir. 2001); *Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.) (1998). The prisoner bears the burden of demonstrating exhaustion of his available remedies. *See Brown*, 139 F.3d at 1104.

Defendants contend that plaintiff failed to exhaust his administrative remedies with respect to his February 9, 2004 claim because he filed an untimely Step III grievance directly against defendants. However, even if plaintiff filed an untimely grievance, the Sixth Circuit has held that "the timeliness of an inmate's grievance is irrelevant under the PLRA's exhaustion requirement" because § 1997e(a) only requires that the prison be given the opportunity to investigate the prisoner's claim. *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003). Accordingly, under *Woolum*, the court must conclude that plaintiff has exhausted his administrative remedies.

**B.  Plaintiff's retaliation claim**

Finally, if the court does not dismiss plaintiff's complaint for violating the injunction, the complaint should be dismissed for failure to state a cause of action. Plaintiff alleges that defendants retaliated against him if he did not stop " the lawsuits, grievances and using staff social security numbers." Compl. at ¶ V. A prison inmate retains certain First Amendment rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives. *See Pell v. Procunier*, 417 U.S. 817, 822 (1973). These retained First Amendment rights include the right to file grievances against prison officials. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001);

*Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith*, 250 F.3d at 1037. *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Plaintiff's claims fail because he was not engaged in activities protected by the Constitution or statute. The court may take notice of an affidavit filed by plaintiff in another one of his many suits filed in this court. *See Reeves v. Hogle*, 4:04-cv-147, Aff. (docket no. 46). In this affidavit, plaintiff states that as part of the major misconduct hearing process, he received an Internal Affairs investigation report containing the Social Security numbers and dates of birth of eight correctional facility staff members. *Reeves v. Hogle*, Aff. at ¶ 3. In that case, plaintiff stated in his affidavit that corrections officers retaliated against him "[b]ecause I used officers['] Social Security numbers and threats in my kites to health services." *Id.* at ¶ 12.

Similarly, plaintiff complains that defendants in the present case retaliated against him for "the lawsuits, grievances and using staff social security numbers." Compl. at ¶ V. Plaintiff's use of staff social security numbers was not "protected conduct" for purposes of a First Amendment retaliation claim, nor should it be. Social security numbers are unique numerical identifiers used to implement the federal tax system and to identify individuals participating in various government programs. *See Bower v. Roy*, 476 U.S. 693, 711 (1986); *Miller v. Commissioner of Internal Revenue*, 114 T.C. 511, 517 (2000). An individual has a substantial informational privacy interest

7

in his or her social security number (sometimes referred to as "SSN"). *Sherman v. U.S. Department of the Army*, 244 F.3d 357, 365 (5th Cir. 2001). "[T]he concern is that the simultaneous disclosure of an individual's name and confidential SSN exposes that individual to a heightened risk of identity theft and other forms of fraud." *Id.* "[T]he harm that can be inflicted from the disclosure of a social security number to an unscrupulous individual is alarming and potentially financially ruinous." *Greidinger v. Davis*, 988 F.2d 1344, 1353 (4th Cir. 1993). A social security number is synonymous with an individual's identity. It is no surprise that Congress has made the false use of a social security number a felony. *See* 42 U.S.C. § 408(a)(7)(B) (an individual who "falsely represents a number to be a social security account number assigned by the Commissioner of Social Security to him or to another person, when in fact such a number is not the social security number assigned by the Commissioner of Social Security to him or such other person . . . shall be guilty of a felony.") .

In enacting the Privacy Act of 1974, the federal government recognized a privacy right in social security numbers and regulated the government's use of that information. *See* 5 U.S.C. § 552a. *See, e.g., Doe v. Chao*, 540 U.S. 614 (2004) (plaintiffs' suit based upon an improper disclosure of social security numbers by the Department of Labor violated § 552a). A person's social security number is protected as private, non-public information. *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1062 (6th Cir. 1998) (enjoining the release of the personnel files containing the names, addresses and SSN's of police officers who had testified against members of a gang without providing prior notice to the officers); *Norwood v. FAA*, 993 F.2d 570, 575 (6th Cir. 1993) (determining that the redaction of an individual's SSN from FOIA documents is necessary to protect the identities of the individuals discussed in the documents). Indeed, this court specifically

prohibits the listing of a social security number on pleadings. *See* W.D. Mich. LCivR 10.7(1) ("If an

individual's social security number must be included in a pleading, only the last four digits of that number should be used").

The court is aware of no First Amendment right to obtain, use or disseminate another person's social security number. On the contrary, in *Purdy v. Burlington Northern and Santa Fe Railway Company*, No. 0:98-cv-00833-DWF, 2000 WL 34251818 (D. Minn.), *aff'd* 21 Fed. Appx. 518 (8th Cir. 2001), the court enjoined the plaintiff from publishing on his website the salaries and social security numbers of 800 railroad employees which were misdelivered to him in an e-mail. In issuing the injunction, the court rejected the plaintiff's First Amendment argument:

> When private rights are pitted against First Amendment rights, the Court is called upon to determine whether those private rights are sufficiently weighty to justify a prior restraint. Here, the Court concludes that those private rights are sufficiently weighty. The privacy right implicated here is not the right to some economic advantage or the right to avoid embarrassment; the right implicated here is the right of these employees to the very integrity of their identities. The Court cannot stress enough the harm to which these individuals will be exposed if this information is published.

*Purdy*, 2000 WL 34251818 at *6. The undersigned believes that the court's reasoning in *Purdy* applies with equal vigor to the privacy rights at issue in this case.

Plaintiff has a First Amendment right to file written grievances and pursue lawsuits against MDOC staff. *Smith*, 250 F.3d at 1037; *Herron*, 203 F.3d at 415; *Noble*, 87 F.3d at 162. However, plaintiff does not have a constitutionally protected right to violate the privacy of MDOC staff by using or disseminating their social security numbers. The federal government regulates its own use of social security numbers. *See* 5 U.S.C. § 552a; *Doe*, 540 U.S. 614. To allow a prisoner to pursue a First Amendment retaliation claim in this court, in order to protect the prisoner's alleged

constitutional right to engage in the unauthorized use of the staff's social security numbers, makes a mockery of the privacy right that all individuals possess in their social security numbers.

Plaintiff has failed to establish that he engaged in activities protected by the Constitution or statute when he used MDOC staff social security numbers in his kites. *See Smith*, 250 F.3d at 1037; *Thaddeus-X*, 175 F.3d at 394. Accordingly, his retaliation claim fails.

### III. RECOMMENDATION

Accordingly, I respectfully recommend that plaintiff's complaint be **DISMISSED** for violating the court's March 31, 2004 injunction and that defendants' motion to dismiss (docket no. 31) be **GRANTED**.

Dated: January 17, 2006         /s/ Hugh W. Brenneman, Jr.
                                Hugh W. Brenneman, Jr.
                                United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).