UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED REEVES,

           Plaintiff,           Case No. 5:04-cv-193

v.           Honorable Robert J. Jonker

J. GREENFIELD et al.,

           Defendants.

_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The matter previously was before the Court on Defendants' motion to dismiss raising, among other matters, Plaintiff's lack of exhaustion of available administrative remedies (docket #31). The magistrate judge recommended denying the motion to dismiss on the grounds of exhaustion, but recommending dismissal on other grounds (docket #42). On April 6, 2006, the Court rejected the magistrate judge's recommendations with respect to the other issues, but left undisturbed the magistrate judge's conclusions regarding exhaustion (docket #47).

Since that time, the Supreme Court has issued a decision affecting the authority underlying the magistrate judge's determination on exhaustion. *See Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378 (2006). Defendants filed a renewed motion to dismiss for lack of exhaustion (docket

#109), which this Court since has converted into a motion for summary judgment (docket #112). Plaintiff has responded to the motion, attaching supporting documentation. Defendants have filed no reply brief or supporting documentation. Upon review, I recommend that Defendants' motion again be denied.

## **Applicable Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*,

201 F.3d 784, 788 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). "A mere scintilla of evidence is insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see also Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

> [A] nonmoving party may not avoid a properly supported motion for summary judgment by simply arguing that it relies solely or in part on credibility considerations . . . . [I]nstead, the nonmoving party must present affirmative evidence to defeat a properly supported motion for summary judgment. [T]he party opposing summary judgment must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and . . . the opposing party may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof.

*Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004), *cert. denied*, 543 U.S. 1120 (2005) (citations omitted).

**Facts**

Plaintiff is presently incarcerated at the Marquette Branch Prison, but the events giving rise to this action occurred while he was incarcerated at the Ionia Maximum Correctional

Facility (ICF). In his *pro se* complaint, he sues the following ICF employees: J. Greenfield, L. Gilman, D. Hall, E. Huss, D. Mackey, Sgt. (unknown) Pierce, A. Vroman, and W. Smith.

Plaintiff alleges that on February 9, 2004, he was taken to the unit two day room and assaulted by officers Hall and Greenfield while in full restraints. He alleges that the officers slammed his head against the wall and injured his arms and back while pulling on the restraints. During the assaults, the officers allegedly told him, "If I did not stop it with the lawsuits, grievances, and using staff social security numbers I would get my black ass killed." According to Plaintiff, before being left in the day room with Hall and Greenfield, he had told Defendant Pierce that the officers had threatened him and that he feared for his safety if left alone with them. Plaintiff also alleges that he informed Defendants Smith, Gilman, Nuss, Vroman and Mackey of those earlier threats of assault, but they had failed to act to protect him. In addition, he alleges that he previously advised ICF personnel B. Goodson and Inspector Haynie, who are not defendants in this action, of the threats to his safety.

According to Plaintiff's sworn declaration attached to his response to Defendants' motion, Plaintiff was on paper restriction at ICF at the time of the incident in question. As a result, he was unable to file a grievance until February 14, 2004, the date the restriction was removed and his property was returned to him. Plaintiff avers that he sent a Step I grievance to the ICF grievance coordinator on that date. Plaintiff further avers that, approximately two weeks later, not having received a response to his first grievance, Plaintiff sent a second grievance to Step I. He declares that he attached to the second grievance a letter explaining that he had not received a response to the first grievance. (Pl. Decl. ¶¶ 4-5, docket #114-2.) On March 8, 2004, having received no response from either grievance sent to Step I, Plaintiff sent a grievance directly to Step III by way

of Sandra Girard of Prisoner Legal Services. That grievance was rejected as untimely on March 19, 2004.

## Discussion

Defendants claim that they are entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance

---

[1] The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.*, the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such

instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

Defendants argue that Plaintiff filed only one grievance, on March 8, 2004, well after the five-business-day requirement of the grievance policy. That grievance, which was filed directly to Step III, was rejected as untimely on March 19, 2004. Defendants contend that, because Plaintiff did not properly file his grievance within the time limitations of the policy directive, the claim is not properly exhausted and should be dismissed.

In response to Defendants' motion, Plaintiff has submitted a sworn declaration, in which he avers that, at the time of the incident underlying his complaint, he was on paper restriction and was not allowed grievance forms in his cell. (Pl. Decl. ¶3, docket # 114-2.) On February 14, 2004, Plaintiff was released from paper restriction and some of his property was returned. He declares that he filed a Step I grievance on that date, which was timely under the policy directive. After two weeks, not having received a response to his grievance, Plaintiff filed a second grievance, attaching a letter explaining the lack of response to his first grievance. (Pl. Decl. ¶¶ 3-4.) Plaintiff again received no response to either grievance. As a result, on March 8, 2004, he filed a grievance directly to Step III, as authorized by the policy directive for cases involving staff brutality or corruption. MICH. DEP'T OF CORR., Policy Directive 03.02.130(S) (effective Dec. 19, 2003). That grievance was rejected as untimely, notwithstanding Plaintiff's explanation for the delay. (Pl. Decl. ¶ 7.) Plaintiff states that ICF has a history of disposing of prisoner grievances without responses. (Pl. Decl. ¶ 9.) He references other examples of grievances filed by him to which he received no response. (¶¶ 10, 12-14.) He further declares that the pattern of ICF to dispose of greivances has

led him to use his mail disbursement account to forward grievances to Sandra Girard of Prisoner Legal Services for filing, rather than relying on the interdepartmental mail system. (¶¶ 10-11.)

Defendants have made no response to Plaintiff's averments. They have introduced no conflicting evidence to dispute Plaintiff's sworn averments. Moreover, Plaintiff's contentions are consistent with the statements made in his March 8, 2004 grievance, in which he attempted, however inelegantly, to explain the lateness of his reply:

> PRIOR TO BEING IN THE DAY ROOM WITH OFFICERS GREENFIELD AND HALL I TOLD SGT. PIERCE TO WATCH MY BACK. IVE [sic] WROTE THE WARDEN'S OFFICE AND BOTH INSPECTORS (DUE TO PAPER RESTRICTION, STOLEN PROPERTY, AND STOLEN MAIL THIS GRIEVANCE IS LATE)
> Filed to Step #3 due to staff corruption

(Step I grievance, Compl. Ex. D.) As the Supreme Court has held, exhaustion is in the nature of an affirmative defense, which "defendants have the burden to plead and prove." *Nixon v. Sanders*, No. 06-1013, 2007 WL 2349344, at *1 (8th Cir. Aug. 17, 2007) (citing *Jones*, 127 S. Ct. at 919-22). Defendants here have introduced no proof at summary judgment to rebut Plaintiff's express averments that he attempted to exhaust his administrative remedies and was prevented from doing so in a timely fashion, nor have they argued the insufficiency of those attempts. Given that the burden remains on Defendants to plead and prove the affirmative defense, summary judgment is inappropriate on this record.

**Recommended Disposition**

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (docket #109) be denied.


Dated:  November 15, 2007                               /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).